## THE PEOPLE OF THE STATE OF NEW YORK EX REL. JOHN McCABE *v.* THE BOARD OF FIRE COMMISSIONERS OF THE CITY OF NEW YORK.

*Removal of an officer of the fire department of New York for incapacity — a mere error of judgment will not support the charge.*

The relator, the second assistant chief of the fire department of the city of New York, was removed for alleged incapacity upon the ground that, by unneces sarily sending out a signal at a fire by which more engines and trucks were called than were necessary — thereby uncovering and depriving of all fire extinguishing apparatus, and seriously endangering life and property in, a large and important section of the city — he had violated a general order of the department, which declared that an officer should " be responsible for any want of judgment, skill, neglect or failure, which *may cause unnecessary loss of life, limb or property.*" It was not claimed that any actual loss of life, limb or property had occurred by reason of the signal so given, nor that the relator did not successfully extinguish the fire, and it was shown that the question as to whether or not the signal should have been given was one upon the answer to which firemen of skill and experience might differ.

*Held,* that the general order only included cases in which an actual loss had been caused.

That as the charge of incapacity rested upon this single act, which was neither a violation of duty nor conduct injurious to the public welfare, nor the cause of loss of life, limb or property, it was but an error of judgment, which did not authorize the removal of the relator.

CERTIORARI to review the proceedings of the fire commissioners of the city of New York in removing the relator from his office in the said department.

*Elihu Root, Roswell D. Hatch* and *George B. McCloskey,* for the relator.

*D. J. Dean* and *William L. Findlay,* for the respondent.

PEOPLE ex rel. McCABE v. FIRE COMRS.   555

First Department, March Term, 1887.

Brady, J.:

The relator was the second assistant chief of the fire department, and was removed for alleged incapacity. The specification accompanying the charge was that at a fire on the 5th of July, 1886, he unnecessarily sent out a signal known as the three-sixes, or simultaneous call, the effect of which was to put in motion more engines and trucks on the way to the fire, some of which only arrived, however, the order having been countermanded by the chief. The other charge, which was a corollary of the first, was not proved. It is that having given the signal mentioned he thereby, without due cause and reason, and for want of judgment or skill on his part, which may have caused unnecessary loss of life, limb or property, uncovering and depriving of all fire extinguishing apparatus and seriously endangering life and property in a large and important section of the city, and thereby leaving only two companies in quarters on Manhattan Island north of Fourteenth street during the celebration of 'Independence Day, when fires are invariably of very frequent occurrence, and when it was of the utmost importance that no part of the fire-extinguishing force should unnecessarily be out of quarters; and this was based upon a general order, which is as follows, declaring that an officer shall " 3. Be responsible for any want of judgment, skill, neglect or failure which *may cause unnecessary loss* of life, limb or property."

The rule, it will be perceived, contemplates the actual happening of one of the several events stated, namely, unnecessary loss of life, limb or property; but the specification is " may have caused," which is entirely different in form and substance — all the difference between the affirmative and possible. If the rule is designed to include what might happen as contradistinction from what did happen, then we are in the realm of possibilities, and dealing with shadows and not substances — with what might be but is not — and this the rule does not accomplish. The word unnecessary, in its relation to the other words of the rule, indicates clearly, indeed, that one of the several losses may occur, and, therefore, if not unnecessary, it has no vitality. In other words, if an error be made and it causes any of the losses designated, but not an unnecessary one, then the officer is not responsible. If the design were to provide against any contingency of the kind mentioned, it should have

556    PEOPLE ex rel. McCABE v. FIRE COMRS.

FIRST DEPARTMENT, MARCH TERM, 1887.

been that the officer would be held responsible for any loss of life, limb or property caused by his want of judgment or skill, neglect or failure, and if to include possibilities as well, it should be that he would be held responsible for any loss which might occur, through his want of judgment, skill, neglect or failure. The rule does not embrace such possibilities, and if it did, it would seem to be unreasonable. As the rule must be interpreted, however, the proof failed to show its violation. The charge resting upon it clearly was not established, no loss having resulted from the call made.*

It is not supposed that the commissioners meant to base their judgment upon the theory that although the call might have caused a loss but did not, the relator was responsible and must be dismissed, but that they thought his incapacity proved and his unfitness established. The alleged incapacity rests therefore upon a single act, yielding to the respondents all they can claim. And this act was neither a violation of duty, nor conduct injurious to the public welfare, nor the cause of loss of life, limb or property, but an error of judgment and an error of judgment only. It was not charged that the relator had failed in his efforts to subdue the fire or that in the management or control of the different instruments and agents actually employed for that purpose he had erred or had shown his incapacity, but that he had in the exercise of his judgment, and it would seem from excessive caution or zeal, called into requisition more power than the emergency demanded. It was no want of skill, therefore, in handling the apparatus at the fire, no want of judgment in commanding, directing or guiding the men under his command, but simply and only in calling out too many engines and trucks by which for a time other parts of the city might be exposed in consequence, although in fact the-- were not so exposed, no fire having occurred.

The relator was not said to have been unfit for duty by any act of indiscretion or folly, or to have shown incapacity in any other respect than that mentioned, namely, in ordering to the fire by a signal, and, on one occasion only, more engines than were needed. It must be noted also, as bearing upon the subject, that the chief officer, who was his superior in rank and called against him, testified that he was a fireman of skill and experience, accus-

PEOPLE ex rel. McCABE *v.* FIRE COMRS. 557

First Department, March Term, 1887.

tomed to command and had commanded at fires, and that no complaint had ever before been made against him. It appeared, indeed, that he rose to the position he occupied by merit, having shown the necessary capacity to warrant his advancement, and whether the order which induced his removal was an error of judgment, depended, it must be said, upon the opinion of experts, who admitted that a difference of opinion on the subject might exist between firemen and firemen of skill and experience. Thus far, therefore, we have arrayed against the charge of incapacity many cogent facts, namely, that the relator is a fireman of skill and experience who rose by force of his own merits to the position he occupied, and who has not only discharged the duties faithfully and well of humbler places in the department, but also in his last and highest position, and has *commanded at several fires successfully;* and, consequently, it must be said that, having so commanded, he must have had the capacity to discharge that important duty. Indeed, it must be further said that he commanded at this fire successfully, inasmuch as no complaint of any result in reference to it has been made against him, and the inference fairly to be drawn from all these facts is not one of incapacity, but that a mistake was made, and that, too, not in the manner in which the apparatus at hand was employed or the force present was directed, but in giving a signal for further aid, which, while it seems to have been unnecessary, might at the moment the order was given have been quite justifiable in the exercise of a vested discretion.

This last suggestion is made for the reason that after the call a change occurred in the existing conditions by the falling of beams without causing the fall of the walls, and which diminished the danger of a more extended conflagration. It must be conceded in the estimate of the evidence against the relator, which consists chiefly of opinions that the various elements which are to be contended with in contemplating an extensive fire, when the double purpose of extinguishing it and preventing its advance is to be accomplished, may well lead to errors of judgment in the ablest and most experienced fireman. Indeed, the testimony justifies the view that it has done so, and this conclusion alone seems to demand that more than a single error of judgment shall be proved to warrant a dismissal on the ground of incapacity. No adjudicated case bearing

**558** PEOPLE ex rel. McCABE v. FIRE COMRS.

FIRST DEPARTMENT, MARCH TERM, 1887.

directly upon this subject has been found except *The People ex rel. Folk* v. *Board of Police* (69 N. Y., 411), and that is not at all analogous, for the reasons that there were many charges of omission and commission, which, grouped together, were regarded as sufficient to justify the charge of incapacity. They were acts which affected the discharge of the relator's duty in various and several aspects, and therefore entirely different from this case in which the charge rests not upon omission of duty or error in the performance of duty, or error in actually extinguishing the fire, but an error of over zeal, by which too much was done to render success beyond question in combatting a destroying element. The history of all struggles when subjected to criticism, whether arising in time of peace or war, reveals errors of judgment, errors committed by commanders of acknowledged, unquestionable ability and experience, but this has not been regarded as evidence of incapacity. Indeed, it may be said truthfully, that the man is yet to come who, in all emergencies, has not blundered, whether he be lawyer, juror or judge, major-general, minister, governor, crowned head or president! And while the error committed has demonstrated that as to the particular subject a failure to deal with it properly could not be denied, it has not been regarded as evidence of incapacity to discharge the duties of the position held or to command. Indeed, giving the full measure to capacity in its broadest sense, it does not mean infallibility, and incapacity *e converso* does not imply absolute fitness, unerring and unfailing ability. It means general unfitness to command, a defect of intellectual grasp, experience or aptitude to cope with the emergency in all its varied aspects, not on one occasion only but generally, a want of comprehension to appreciate surroundings and conditions and to deal with them skillfully, if not successfully, not on one occasion but generally. Experience, the master teacher, often demands the occurrence of more than one incident to prepare and instruct, and rarely contributes to success, to great achievements, to grand results, except after many impressive events. In the language of a distinguished author: Experience, like the light in the stern of a vessel, illumines only the path that is past. The conclusion, therefore, which impresses itself irresistibly, is that a single error of judgment by him, assuming one to have been committed, such as proved herein, is not sufficient evidence of

the relator's incapacity to warrant his removal. The power of this court to review and reverse for this reason cannot be doubted. (*People ex rel. Dumahaut* v. *Fire Commrs.*, 96 N. Y., 672; *People ex rel. Munday* v. *Fire Commrs.*, 72 id., 445; *People ex rel. Mayor* v. *Nichols*, 79 id., 588.)

The findings and sentence against him should, therefore, be annulled, and he reinstated.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Finding and sentence against the relator annulled. and he reinstated with costs.